Filed 8/21/23  Valdez v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| PONCILO VALDEZ, | |
| Petitioner, | E080205 |
| v. | (Super. Ct. No. FSB1203461) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  J. David Mazurek, Judge.  Petition Denied.

James M. Crawford, for Petitioner.

Jason Anderson, District Attorney, and Kyle Karnes, Deputy District Attorney, for Real Party in Interest.

No appearance for Respondent.

1

INTRODUCTION

Petitioner Poncilo Valdez and his brother, Albert Valdez, were charged with committing murder on May 22, 2012, active gang participation, and possession of a firearm by a felon.[1] After the trial court conducted a preliminary hearing in 2014, the court found sufficient evidence to charge defendant with the offenses and enhancements of murder (Pen. Code, § 187[2]; count 4), possession of a firearm by a felon (§ 29800; count 6), active gang participation (§ 186.22, subd. (a); count 7 (Gang charge)), and gang enhancements as to counts 4 and 6 (§ 186.22, subd. (b)(1)(C) (Gang enhancements)).

While awaiting trial, in March 2022, defendant filed a motion to dismiss the Gang charge and Gang enhancements under section 995, based on changes to section 186.22, amended by Assembly Bill No. 333 (Stats. 2021, ch. 699, § 3, eff. Jan. 1, 2022) (A.B. 333). Applying A.B. 333 retroactively, the trial court concluded that the preliminary hearing evidence was insufficient to support the Gang charge and Gang enhancements attaching to counts 4 and 6. The trial court therefore ordered a limited remand to the magistrate under section 995a, subdivision (b), to conduct a hearing solely on the issues of whether the predicate offenses qualified under the current version of section 186.22,

---

[1] Albert, Peter Molina, and Adolfo Oropeza, but not defendant, were also charged with a separate murder on March 28, 2012. A single preliminary hearing was held as to both of the murders and all defendants were held to answer for the alleged charges and enhancements. Albert, Molina, and Oropeza are not parties to the instant writ petition brought by defendant.

[2] Unless otherwise noted, all statutory references are to the Penal Code.

and whether the criminal conduct benefited the Gang more than just enhancing its reputation. After the matter was transferred back to the magistrate, and before the magistrate conducted a limited hearing on the matter, defendant filed the instant section 999a petition for a writ of mandate/prohibition.

Defendant contends in his writ petition that the Gang charge and Gang enhancements must be dismissed because section 995a, subdivision (b)(1) is inapplicable. We agree section 995a, subdivision (b)(1) is inapplicable, but conclude the trial court did not err in denying defendant's motion to dismiss and allowing a limited reopening of the preliminary hearing to allow the prosecution to present additional evidence required to prove the Gang charge and Gang enhancements under amended section 186.22. Defendant's writ petition is therefore denied. On remand, the prosecution may request reopening the preliminary hearing to prove the new requirements for the Gang charge and Gang enhancements, in accordance with the requirements of section 186.22, as amended by A.B. 333. Alternatively, the prosecution may elect to proceed on an amended information without the substantive Gang charge and Gang enhancement allegations.

## II.

## FACTS[3]

A. *Detective Vasilis's Testimony*

During the preliminary hearing on June 19, 2014, Sheriff's Detective Vasilis testified that he was assigned to investigate the homicide of Edward Urena.

### 1. Dennis Williams's Interview

On May 24, 2012, Detective Vasilis interviewed Dennis Williams, who was at the scene of the murder. Williams told Detective Vasilis that a friend of his, Adolfo Oropeza, owned the property where the homicide occurred. Urena arrived at Oropeza's home shortly after 8:00 p.m. When he arrived, two men, defendant and Albert, and a women were there, plus Oropeza. Shortly after arriving, Urena got into an argument with defendant. Defendant told Urena to leave because he disrespected Oropeza and his property. In response, Urena knocked down defendant. Defendant got up and was holding a semiautomatic handgun in his left hand. Defendant fired the gun four or five times at Urena from about eight feet away but missed Urena.

Albert grabbed the gun from defendant and said, "[y]ou're missing him," and fired the gun at Urena one time. As Urena approached Albert, Albert fired at Urena again. Urena fell to the ground. Albert walked up to Urena while he was on the ground and fired a shot into Urena's head and a couple more shots into his body.

---

[3] Because this case has not been tried, the facts are taken from the transcript of the preliminary hearing on June 19, 2014.

4

Albert, defendant, and the woman then ran to the front of Oropeza's property and out to the street. A car pulled up and the three individuals got into the car. The car drove away.

### 2. Oropeza's Interview

Vasilis also interviewed Oropeza, who said that the two men who were involved in killing Urena were "Grumpy" and "Sinner," who were brothers and gang members. Oropeza later revealed that Grumpy was Albert and Sinner was defendant. About four months before the shooting, Oropeza met Grumpy through a friend and then met Sinner through Grumpy. Oropeza also knew Urena.

Around 3:00 p.m., Albert came over to Oropeza's home looking for defendant, who was not there at the time. Albert waited for defendant. Around 6:00 p.m., defendant arrived with his girlfriend. Shortly after they arrived, Urena arrived. Urena borrowed money from Oropeza and left.

Urena later returned after 10:00 p.m. Oropeza told Detective Vasilis that Albert, defendant, and Urena may have had a falling out because Urena took over selling drugs in the same apartment complex where defendant and his girlfriend were selling drugs. Also, Oropeza's son was growing a marijuana plant and the plant was missing. Defendant and Albert believed Urena stole the plant.

When Urena returned later that evening, Oropeza, his wife, Albert, defendant, and three others were there. At that time, Williams and his friend were working on Oropeza's car and the others were in a separate area where there was a patio and food. Defendant

5

and his girlfriend began walking around the property arguing. Albert walked over to where Urena was. Oropeza, his wife, and two others also went over there when they heard the arguing. When Oropeza got there, he saw defendant pointing a handgun at Urena and yelling at Urena that he had three minutes to get off the property or he was going to kill him. Urena responded that "I guess I die right here." From eight feet away, defendant fired the gun at Urena but missed.

While Oropeza was trying to calm down Urena, Albert, and defendant, Albert said something to the effect, "F—k this fool." Albert took the gun from defendant and started shooting Urena. Albert fired the gun four times, striking Urena in the stomach. Defendant did not make any effort to stop Albert from shooting Urena. Urena tried to run, tripped, and fell to the ground. Defendant, his girlfriend, and Albert fled from Oropeza's property. They ran out to the street, where someone picked them up. During a photographic lineup, Oropeza identified Albert as the shooter.

B. *Police Officer Olvera's Testimony*

San Bernardino Police Officer Olvera testified that on October 15, 2013, Oropeza provided him with information regarding the shooting. Oropeza identified defendant in a photographic lineup and in court during the preliminary hearing. Oropeza told Officer Olvera that defendant was present during the shooting and was observed holding a handgun.

During the preliminary hearing, the parties stipulated that Officer Olvera qualified as a gang expert. Officer Olvera testified that he had training regarding the gang, East

6

Side Verdugo (Gang), and had spoken to members of the Gang, as well as others who had investigated the Gang. The Gang has a common name, signs, and symbols. Oropeza's property, where the shooting occurred, is in the Gang's territory. The Gang's primary activities include selling narcotics, vehicle thefts, assault, and battery, including with firearms and knives. Officer Olvera further testified that Irvin Rodriguez, who is a member of the Gang, was convicted of assault with a firearm (§ 245, subd. (a)(2)). The crime was committed on March 27, 2009, and was committed for the benefit of the Gang. Juan Rodriguez is also a member of the Gang. On January 15, 2011, he committed assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)).

Officer Olvera testified that he investigated defendant's gang status. Based on the information Officer Olvera gathered over a year of investigation, which included reports regarding the May 22, 2012 homicide of Urena, witness statements regarding the case, and speaking with family members, neighbors, and others living in the community, Officer Olvera concluded that defendant was an active participant and member of the Gang.

Officer Olvera further concluded, based on this information and circumstances, that Albert was also an active participant and member of the Gang. Albert admitted he is a member and has several Gang tattoos. Officer Olvera explained that Gang tattoos had to be earned. Tattoos could be earned by committing crimes and other activities that benefitted the Gang.

Based on reading the reports regarding Urena's homicide, Officer Olvera's own investigation of the incident, and speaking with the witnesses and to the officers who investigated and wrote the reports, Officer Olvera concluded defendant was present with Albert during the homicide. Officer Olvera also concluded the homicide occurred within the Gang's territory. Officer Olvera concluded that, because two Gang members, defendant and Albert, were present together at the crime scene, they acted in association with one another under the "umbrella" of the Gang. Officer Olvera also concluded that Albert's actions benefitted the Gang based on Urena disrespecting Oropeza and because the "homicide itself would . . . go to the overall reputation of the gang. It benefits the gang's reputation by continuing to instill fear within the community, to instill fear within the victim's family and to witnesses involved."

Officer Olvera further testified the following acts and statements by defendant were extremely significant in gang culture. Before the shooting incident, defendant told Urena, "[y]ou're not wanted here. You disrespected this house." Also, defendant pointed a gun at Urena and said he was going to count to three and if Urena had not left, defendant was going to kill him. Officer Olvera explained that, according to gang culture, these acts and statements were significant because, if an individual is disrespected, there must be retaliation, consisting of discipline carried out by the disrespected gang member to maintain his reputation in the gang and the gang's reputation. Retaliation would include assaults, such as stabbings, physical assaults with hands, fists, and feet, and murder.

8

C. *Detective Wijnhamer's Testimony*

Sheriff's Detective Wijnhamer testified that he was assigned to lead the investigation of the March 28, 2012, homicide of Christopher Martinez. Detective Wijnhamer interviewed the victim's girlfriend, S.J., who said she witnessed Martinez's murder. While she and Martinez were at her residence, she saw Martinez outside talking to three men, Albert, Peter Molina, and Oropeza, who is S.J.'s uncle. Oropeza was yelling about Martinez owing money for narcotics. Martinez responded he would pay Oropeza at the beginning of the month. S.J. heard three gunshots, and saw Oropeza and the two others run to Oropeza's vehicle.

Detective Wijnhamer also interviewed Oropeza about Martinez's homicide. Orpeza said Martinez visited him and told him he would pay the money he owed Orpeza at the beginning of the month. The following night, Gang member, Molina, met with Oropeza. Oropeza told Molina that Martinez owed money for drugs. Molina said he wanted to go to Martinez's residence and make sure he paid Oropeza. Molina and Oropeza picked up Albert and drove to Martinez's house. Molina told Martinez he had to pay the money he owed for drugs by the end of the month. Albert got out of the car and started fighting with Martinez. While fighting, Albert grabbed his gun and shot Martinez several times. Oropeza, Albert, and Molina then got in the car and drove away.

D. *Detective Ditfurth's Testimony*

Sheriff's Detective Ditfurth testified he also investigated the murder of Martinez. Detective Ditfurth testified Albert is an active member of the prison Surenos gang and the

9

Gang, East Side Verdugo Meadowbrook Deuces, which falls within the umbrella of the Surenos and Mexican Mafia. Detective Ditfurth explained that not paying money owed to a gang is considered disrespecting the gang. Such disrespect, in gang culture, requires retaliation. Detective Ditfurth concluded that the Surenos and the Gang were known for their violent acts, which enhanced their reputation and intimidated the community from speaking out against the gangs, thereby perpetuating their criminal activities.

## III.

## PROCEDURAL BACKGROUND

Following a preliminary hearing on June 19, 2014, the People filed an information in which defendant was charged with murder of Urena (§ 187; count 4), possession of a firearm by a felon (§ 29800; count 6), and Gang charge (§ 186.22, subd. (a); count 7). Defendant was also charged with the following enhancements: As to count 4, defendant allegedly personally used a firearm (§ 12022.53, subd. (b)) and he was a principal who personally used a firearm (§ 12022.53, subds. (b), (e)(1)); as to counts 4 and 6, defendant committed the offenses for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)(C)); and as to all counts, defendant suffered a prior conviction for violating Vehicle Code section 10851, and was convicted of another felony offense committed within five years of release from prison.

While the case was awaiting trial, in March 2022, defendant filed a motion to dismiss the information under section 995. Defendant brought the motion after the passage of A.B. 333, which amended section 186.22. Defendant moved to dismiss the

10

information on the ground that there was insufficient evidence under amended section 186.22, to support the Gang charge and Gang enhancements. The People opposed the motion.

On November 9, 2022, the trial court heard defendant's motion to dismiss. The court agreed that section 186.22, as amended by A.B. 333, applied retroactively to defendant's case. The trial court further concluded that the preliminary hearing evidence was insufficient to support a finding that the Gang qualified as a criminal street gang under the amended version of section 186.22. The court therefore ordered a limited remand to the magistrate under section 995a, subdivision (b), to conduct a hearing solely on the issues of whether the predicate offenses qualified under amended section 186.22, and whether defendant's criminal conduct benefited the Gang more than just enhancing its reputation. The trial court reasoned that the limited remand was proper and fundamentally fair because the change in section 186.22 resulted in a minor error of omission or technical defect which supported allowing the prosecution to reopen the preliminary hearing to address the changes in the law.

After the matter was transferred to the magistrate and before the magistrate conducted a limited hearing on the matter, defendant filed the instant petition for a writ of mandate/prohibition seeking to compel the trial court to (1) vacate its order denying defendant's motion to dismiss the Gang charge and Gang enhancements and denying the limited remand, and (2) compel the trial court to grant the motion to dismiss.

11

IV.

APPLICABLE LAW

Defendant contends the trial court should have granted his section 995 motion to dismiss the Gang charge and Gang enhancements because there was insufficient evidence presented at the preliminary hearing to support them.  We agree.

A. *Dismissal of Charges and Allegations under Section 995*

If, during a preliminary hearing, "it appears either that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of a public offense, the magistrate shall order the complaint dismissed . . . ."  (§ 871.)  As used in section 872, "'sufficient cause'" is the equivalent of "'"reasonable and probable cause."'" (*Williams v. Superior Court* (1969) 71 Cal.2d 1144, 1147; *Ortega v. Superior Court* (1982) 135 Cal.App.3d 244, 256.)

"Although the prosecution is not put to proof beyond a reasonable doubt in order to establish reasonable and probable cause before the magistrate, nevertheless the burden is on the prosecution to produce evidence that there is a reasonable probability, enough to induce a strong suspicion in the mind of a man of ordinary caution or prudence, that a crime has been committed, and that defendant is guilty.  [Citations.]"  (*Garabedian v. Superior Court* (1963) 59 Cal.2d 124, 126-127.)  The prosecution must produce some evidence of every essential element of the offense.  (*Id*. at p. 127; *Ortega v. Superior Court*, *supra*, 135 Cal.App.3d at p. 256.)

12

A defendant may bring a motion to set aside the information on the ground "[t]hat the defendant had been committed without reasonable or probable cause." (§ 995, subd. (a)(2)(B).) This provision allows the defendant to show that the prosecution has failed to produce sufficient evidence at the preliminary examination. (*Williams v. Superior Court*, *supra*, 71 Cal.2d at p. 1147.) If the trial court denies a section 995 motion, a defendant may, subject to time constraints, file a petition for writ of prohibition in the court of appeal. (§ 999a.)

"'[I]n proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review . . . the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer.' [Citation.]" (*People v. Jones* (1998) 17 Cal.4th 279, 301.) "A reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate, and, if there is some evidence to support the information, the court will not inquire into its sufficiency. [Citations.]" (*Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474.)

We apply these principles in deciding whether there was sufficient cause under section 186.22, as amended, to hold defendant to answer the Gang charge (count 7) and Gang enhancement allegations attaching to counts 4 and 6.

13

B. *A.B. 333 Amendments to Section 186.22*

After the preliminary hearing on June 19, 2014, the Legislature passed A.B. 333, effective January 1, 2022. A.B. 333 modified the law on Gang charges and enhancements: "First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' [A.B.] 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, [A.B.] 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, [A.B.] 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)" (*People v. Tran* (2022) 13 Cal.5th 1169, 1206.) A.B. 333 raised the bar for proving the "pattern of criminal gang activity" needed to establish a criminal street gang. (*People v. Tran*, *supra*, at pp. 1206-1207.)

14

A.B. 333 went into effect on January 1, 2022. (*People v. Lopez* (2021) 73 Cal.App.5th 327, 343.) Its changes to section 186.22 "apply retroactively to all cases . . . in which the judgment of conviction [was] not yet final" as of that date "because the changes 'redefine, to the benefit of defendants, conduct subject to criminal sanctions.'" (*People v. E.H.* (2022) 75 Cal.App.5th 467, 478 (*E.H.*); accord *People v. Lopez*, *supra*, at p. 344 [substantive changes in A.B. 333 apply retroactively because they "increase[] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement"]; *In re Estrada* (1965) 63 Cal.2d 740, 745.)

## V.

## SUFFICIENCY OF EVIDENCE

The parties agree that A.B. 333's amendments to section 186.22 apply here retroactively because they are ameliorative. They redefine favorably conduct punishable under section 186.22. (*People v. Tran*, *supra*, 13 Cal.5th at pp. 1206-1207; *People v. Sek* (2022) 74 Cal.App.5th 657, 673; *In re Estrada*, *supra*, 63 Cal.2d at p. 745.) The judgment against defendant is not yet final for purposes of retroactivity. Defendant pleaded not guilty and is awaiting trial while this writ petition is pending. As such, A.B. 333's amendments to section 186.22 apply retroactively.

Defendant notes in his writ petition that "the prosecution conceded and respondent court found that the evidence presented at the preliminary hearing would not now satisfy the elements of the gang enhancement under section 186.22, subdivision (b)." Defendant again states in his writ petition: "Both real party and respondent court correctly

15

recognized that the preliminary hearing evidence in this case did not support the gang-related enhancements under the law as amended.  (Petition, Exhibits D and G.)"

The trial court stated during the hearing on defendant's motion to dismiss that "I think both sides agree that all the requirements under [A.B.] 333 haven't been met in this case as to gang enhancements, right?"  The prosecutor responded, "Yes."  The court added that "the issue is whether I'm going to let the People reopen or not, right?"  The prosecutor again agreed, as did defendant's attorney.  Nevertheless, we address the sufficiency of evidence because the issue is relevant to determining whether the trial court erred in ordering a limited remand under section 995a rather than dismissing the information Gang charge and Gang enhancements.  Also, defendant and the People dispute the sufficiency of the evidence on appeal.

Defendant contends there was insufficient evidence presented at the preliminary hearing to hold him to answer the Gang charge and Gang enhancement allegations.  Specifically, defendant argues that the two alleged predicate offenses do not qualify as predicate offenses under section 186.22, subdivision (b), as amended.  Also, the evidence does not show that neither the predicate offenses nor the charged Gang offense benefited the Gang other than perhaps enhancing its reputation.  Defendant therefore requests this court to vacate the trial court's order denying his motion to dismiss the Gang charge and Gang enhancements and remanding the case to the magistrate to reopen the preliminary hearing and enter a new order granting his motion to dismiss the Gang charge and Gang enhancements.

The Gang charge, defined in section 186.22, subdivision (a), has three elements: (1) Active participation in a criminal street gang, (2) knowledge that the gang's members collectively engage in, or have engaged in, a pattern of criminal gang activity, and (3) the defendant willfully assisted, furthered, or promoted felonious criminal conduct by committing a felony offense or aiding and abetting members of that gang in doing so. (§ 186.22, subd. (a); *People v. Lamas* (2007) 42 Cal.4th 516, 523; CALCRIM No. 1400.)

Similarly, a gang enhancement under section 186.22, subdivision (b), requires evidence that the defendant "actively participates in a criminal street gang with knowledge that its members engage in, or have engaged in, a pattern of criminal gang activity," and defendant "willfully promotes, furthers, or assists in felonious criminal conduct by members of that gang."  (§ 186.22, subd. (b).)  Section 186.22, subdivision (b) enhances the punishment of a person convicted of an enumerated felony committed "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subd. (b)(1)(4).)

Because section 186.22 had not yet been amended at the time of the preliminary hearing, there is insufficient evidence of a reasonable probability that defendant committed the crime of active gang participation (the Gang charge), or that the Gang enhancements are true.  The evidence presented at the preliminary hearing is insufficient under section 186.22 as amended to establish "'a pattern of criminal gang activity.'"  The evidence is also insufficient to establish that the two alleged predicate offenses and

17

charged offense benefitted the Gang, and that, if there was any benefit, it was more than reputational. (See § 186.22, subd. (e)(1); see also *People v. Lopez, supra*, 73 Cal.App.5th at p. 346 ["Although the People did submit evidence of two predicate offenses that were committed in the new time frame, the People did not prove that the predicate offenses commonly benefitted a criminal street gang and that the benefit was more than reputational"].)

In *E.H., supra*, 75 Cal.App.5th 467, the defendant argued reversal was required because the People did not ask the jury to find some of the elements that A.B. 333 requires, and that the prior law did not require. The People argued that instructing the jury on the former version of section 186.22 constituted harmless error because the record contained substantial evidence to support the gang conviction and enhancements under the new law's stricter requirements. (*E.H., supra*, pp. 479-480.) We stated in *E.H.* that, "[b]ecause Assembly Bill 333 essentially adds new elements to the substantive offense and enhancements in section 186.22 . . . that the prejudice standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 applies. [Citations.] Under that standard, the absence of instruction on the amended version of section 186.22 requires reversal unless 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.'" (*E.H., supra*, at p. 479; *People v. Flood* (1998) 18 Cal.4th 470, 504.)

We concluded in *E.H.* that the absence of the jury instructions on the amended section 186.22 requirements constituted prejudicial error because the People did not prove that the predicate offenses commonly benefitted a gang, the jurors were permitted

18

to consider the current offenses in determining whether the prosecution had proven a pattern of criminal gang activity, and the jurors were not required to find the predicate offenses benefitted the gang. Also, the prosecution's evidence and argument focused on reputational benefit to the gang, which is no longer relevant under amended section 186.22. (*E.H.*, *supra*, 75 Cal.App.5th at p. 479.)

Likewise, here, the evidence was deficient in proving the predicate offenses. The People did not prove that the Gang charge and predicate offenses benefitted the Gang. The prosecution's preliminary hearing evidence and argument focused on reputational benefit to the Gang, which is no longer permitted under amended section 186.22. (*E.H.*, *supra*, 75 Cal.App.5th at p. 479.) The People argue that there was also evidence defendant's Gang crime benefited the Gang financially because it was related to the Gang benefiting financially from drug sales.

In *E.H.*, the People argued that because an officer testified about *financial* benefits to the gang that were not merely reputational, the gang evidence was sufficient even under the new law. We concluded that "[b]ecause the prosecution presented evidence of both financial and reputational benefit, 'we cannot rule out the possibility that the jury relied on reputational benefit to the gang as its basis for finding the enhancements true.' [Citation.]" (*E.H.*, *supra*, 75 Cal.App.5th at p. 480.)

Here, we also cannot tell from the record whether the magistrate held defendant to answer the Gang charge and Gang enhancements based solely on finding a reputational benefit to the Gang. Furthermore, there is little, if any, evidence that Urena's murder was

19

motivated by or related to a drug deal or Gang financial gain. The only evidence in this regard was testimony that Urena owed money for drugs to Oropeza, not defendant or Albert, at the time of the homicide. Yet defendant and Albert, not Oropeza, shot or attempted to shoot Urena. There is no evidence as to whether Oropeza was involved in the shooting, other than being present. He was not charged with the murder of Urena. The evidence that the shooting of Urena was motivated by Gang-related financial gain is tenuous, at best.

In addition, the evidence is insufficient to show that, as to each predicate crime, more than one Gang member committed the predicate crimes. Officer Olvera testified the predicate crime Irvin Rodriguez committed was for the benefit of the Gang but there was no further testimony or evidence establishing whether Irvin committed the crime with another Gang member, why Officer Olvera concluded it was beneficial, or what the benefit was. There was also no testimony or evidence in this regard as to the predicate offense committed by Juan Rodriguez. Officer Olvera did not even provide conclusory testimony that the crime benefited the Gang. Therefore, under section 186.22, as amended and applied retroactively, the evidence adduced at the preliminary hearing was insufficient to support the Gang charge and Gang enhancement allegations included in the information.

# VI.

# LIMITED REMAND ORDER

Defendant contends that the trial court erred in denying his motion to dismiss the Gang charge and Gang enhancements and ordering a limited remand to the magistrate to allow the prosecution to reopen the preliminary hearing under section 995a, subdivision (b)(1). We agree the trial court erred in relying on section 995a, subdivision (b)(1) to reopen the preliminary hearing but we conclude the trial court did not err in denying defendant's motion to dismiss the Gang charge and Gang enhancements and remanding the matter to the magistrate to reopen the preliminary hearing for the purpose of allowing the prosecution to present additional evidence on the amended elements of the Gang charge and Gang enhancements under amended section 186.22.

Section 995a, subdivision (b)(1) provides: "Without setting aside the information, the court may, upon motion of the prosecuting attorney, order further proceedings to correct errors alleged by the defendant if the court finds that such errors are *minor errors of omission, ambiguity, or technical defect which can be expeditiously cured or corrected without a rehearing of a substantial portion of the evidence*. The court may remand the cause to the committing magistrate for further proceedings, or if the parties and the court agree, the court may itself sit as a magistrate and conduct further proceedings. When remanding the cause to the committing magistrate, the court shall state in its remand order which minor errors it finds could be expeditiously cured or corrected." (Italics added.) "A remand to the magistrate per section 995a is authorized in only very limited

21

circumstances.  [Citations.]"  (*Hallissy v. Superior Court* (1988) 200 Cal.App.3d 1038, 1043.)

In *E.H.*, we held that "[t]he proper remedy for this type of failure of proof—where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges.  [Citations.]"  (*E.H.*, *supra*, 75 Cal.App.5th at p. 480; see also *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71-72, fn. 2; *People v. Eagle* (2016) 246 Cal.App.4th 275, 280 ["When a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand.  [Citation.]  Such a retrial is not barred by the double jeopardy clause or ex post facto principles"]; *People v. Lopez* (2020) 57 Cal.App.5th 409, 412, 416 [ordering conviction based on plea bargain vacated in light of amendment that "added an element the prosecution previously had no reason to prove"; remanding for further proceedings "to allow the district attorney the opportunity to prove" those elements]; *People v. Stamps* (2020) 9 Cal.5th 685, 707 ["If he desires, defendant should be given the opportunity to seek" benefit of retroactive change in the law].)

We recognize *E.H.*, *supra*, 75 Cal.App.5th 467, is distinguishable because it concerns a heavier burden of proof and involves reversal based on insufficient evidence of a *jury conviction* for a Gang charge and Gang enhancements under amended section 186.22, whereas this case concerns a limited remand based on the trial court finding insufficient evidence presented at a preliminary hearing.  Nevertheless, our analysis and

conclusions in *E.H.* support the proposition that the trial court's limited remand order was improper under section 995a. *E.H.* demonstrates that the insufficiency of evidence under section 186.22, presented at the preliminary hearing, was by no means "(1) a minor error of omission, ambiguity or technical defect which, (2) can be expeditiously cured." (*Caple v. Superior Court* (1987) 195 Cal.App.3d 594, 601 (*Caple*); see also *Garcia v. Superior Court* (2009) 177 Cal.App.4th 803, 816; § 995a, subd. (b)(1).)

Here, section 995a, subdivision (b)(1) does not apply where there was an omission of evidence of the elements required for establishing the Gang charge and Gang enhancements under amended section 186.22. This omission was not a minor error of omission, ambiguity, or technical defect that could be expeditiously cured. Amended section 186.22 added significant changes in the evidentiary requirements for alleging Gang charges and Gang enhancements. Those additional requirements were not sufficiently addressed by the evidence produced at the preliminary hearing.

We also conclude the omission of evidence required under amended section 186.22 cannot be characterized as minor when considered in relation to the balance of the evidence required to hold defendant to answer the Gang charge and Gang enhancements. (*Caple*, *supra*, 195 Cal.App.3d at p. 602 ["'minor omission' refers to one that is *comparatively* unimportant. Thus, an evidentiary defect will trigger the remand provisions of section 995a, subdivision (b)(1), whenever the omission is minor when considered in relation to the balance of the evidence required in order to hold the accused to answer."].) As agreed by the parties and trial court, the evidence produced at the

23

preliminary hearing is insufficient to satisfy the elements of the Gang charge and Gang enhancements under the amended version of section 186.22. Addressing the evidentiary deficiencies on remand before the magistrate under section 995a would likely require far more than a brief inquiry of a question or two.

It is likely that such a remand would require a protracted hearing involving presenting substantial evidence proving and refuting the additional required elements under amended section 186.22. (See *Caple*, *supra*, 195 Cal.App.3d at pp. 603-605; *Garcia v. Superior Court*, *supra*, 177 Cal.App.4th at p. 816.) The additional evidence required to establish the new elements under amended section 186.22, in relation to the balance of evidence required to hold defendant to answer, is not minor or minimal. (*Caple*, *supra*, at p. 602.)

As noted in *Caple*, section 995a is ambiguous as to what qualifies as minor. (*Caple*, *supra*, 195 Cal.App.3d at pp. 601-602.) The court suggests in *Caple* and *Mendoza v. Superior Court* (2023) 91 Cal.App.5th 42, 58-59 (*Mendoza*) that the determination of whether an error of omission is "minor" should be made on a case by case basis, by comparing the totality of the evidence presented at the preliminary hearing verses the evidence required to cure the error of omission. (*Mendoza*, *supra*, at pp. 58-59; *Caple*, *supra*, at p. 602.)

Here, the error of omission consisted of the People not providing the requisite evidence under amended section 186.22 needed to establish the Gang charge and Gang enhancements. The People were required under amended section 186.22 to establish

24

whether the Gang qualified as a criminal street gang and whether there was any benefit to the Gang from defendant's conduct which was more than merely reputational. The People moved in the trial court to dismiss to reopen the preliminary hearing "for the purpose of establishing that two of the predicate offenses officers testified to in the preliminary hearing included multiple gang members as codefendants who acted collectively to benefit the gang." The defendant argued in its reply to opposition filed in the trial court, that the error of omission was not minor or expeditiously curable because the People were required to, not only present new evidence of qualifying predicate offenses but also establish that the benefit of defendant's conduct benefited the Gang beyond any reputational benefit.

The trial court hearing defendant's motion to dismiss concluded that the evidence the People presented at the preliminary hearing did not "come close to what they need to have proven" under amended section 186.22, but then added that the absence of evidence was not an omission. Rather, it was a technical defect because the law changed requiring new technical requirements after the preliminary hearing.

After hearing extensive argument, the trial court stated that it was going "to allow the People to reopen as to the issue with respect to the predicates and with respect to whether there was more than reputation involved as a benefit to the gang." The court stated it was doing so based on due process and fundamental fairness to the People, who should not be precluded from establishing the Gang charge and Gang enhancements under amended section 186.22. The court also based its ruling on section 995a, finding

25

that the lack of evidence was not an "omission" but a "technical matter" concerning two limited issues: "the predicates and whether the predicates are legally sufficient and whether the common benefit to the gang was more than reputational compared to all the evidence as a whole. It is not substantial. It is minor in nature." The trial court therefore permitted the People to reopen the preliminary hearing to address these issues under amended section 186.22.

We conclude, based on our review of the record, that the error of omission of evidence required under amended section 186.22 is not minor or comparatively unimportant nor is it the type of evidentiary omission or technicality that likely would be expeditiously cured. (*Mendoza*, *supra*, 91 Cal.App.5th at pp. 59-60; *Caple*, *supra*, 195 Cal.App.3d at p. 602.) Under such circumstances, the trial court erred in remanding the matter to the magistrate to reopen the preliminary hearing under section 995a, subdivision (b)(1). We thus disagree with *Mendoza*, to the extent the *Mendoza* court held that it was proper under section 995a for the trial court to reopen the preliminary hearing on the Gang charge and Gang enhancements. (*Mendoza*, *supra*, at pp. 58-60; *Garcia v. Superior Court*, 177 Cal.App.4th at p. 814.)

Nevertheless, even though we conclude the omission of evidence required under amended section 186.22 is not minor under section 995a, we conclude reopening the preliminary hearing was permissible. As the court in *Mendoza* concluded, "even assuming the language of section 995a, subdivision (b)(1) does not support reopening the preliminary hearing proceedings under the circumstances, the remedy we adopt is

26

supportable as a rule of judicial procedure by application of the principles governing postconviction reversals based upon a change in the law.  (See § 1260 ['The court may . . . if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances']; accord, *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1254 [noting when error is shown, § 1260 gives appellate courts 'the authority to select among several dispositions']; see generally *People v. Gaines* (2009) 46 Cal.4th 172, 180 ['"Section 1260 evinces a 'legislative concern with unnecessary retrials where something less drastic will do'"'].)"  (*Mendoza*, *supra*, 91 Cal.App.5th at pp. 60-61.)

The *Mendoza* court explained that, "[w]hile, '"[h]istorically, trial courts have been prohibited from remanding felony prosecutions to correct errors in the commitment"' [citations], here, neither party contends there was error in the original commitment of Mendoza before the law changed.  And, like the double jeopardy clause, the Legislature has limited the prosecutor's ability to have repeated opportunities to pursue the same charge, in part, to protect 'the defendant against the harassment and risks of unnecessary repeated [proceedings] on the same charge—by the device of giving the prosecution a powerful incentive to make the best case it can at its first opportunity.'  [Citations.]" (*Mendoza*, *supra*, 91 Cal.App.5th at p. 61.)

The *Mendoza* court aptly notes that, "as with the double jeopardy clause, 'the incentive serves no purpose when, as here, the prosecution did make such a case under the law as it then stood; having done so, the prosecution had little or no reason to produce other evidence of guilt.'  [Citation.]  The issue here, as in cases in which the law has

27

changed postconviction, is not of insufficiency of the evidence. And further preliminary hearing proceedings should not be prohibited in such instances to permit the prosecution to prove new additional elements of an offense that go into effect after a defendant has been held to answer. (See *People v. Figueroa*, *supra*, 20 Cal.App.4th at p. 71 ['To say that appellant is now free of the enhancement would be to reward him with a windfall'].)" (*Mendoza*, *supra*, 91 Cal.App.5th at p. 61.)

Defendant urges this court to reject *Mendoza*, *supra*, 91 Cal.App.5th 42 and its reliance on section 1260 to reopen the preliminary hearing. Defendant argues that there is no authority for extending section 1260 to pre-conviction interlocutory orders that are not yet final and not reviewable on appeal. Defendant further asserts that section 1260 is inapplicable to the preliminary hearing order, and therefore concludes this court cannot order the preliminary hearing reopened to establish the new statutory requirements under amended section 186.22. We conclude, to the contrary, that *Mendoza* provides persuasive support for allowing the trial court to reopen the preliminary hearing based on analogous postconviction circumstances subject to section 1260.

Further, as noted in *Mendoza*, allowing the prosecution to reopen the preliminary hearing here for the limited purpose of presenting additional evidence is consistent with the interests of justice in providing the parties with a reasonable and fair opportunity to receive a judicial determination of probable cause based on the new elements required under amended section 186.22 for the Gang charge and Gang enhancements (*Mendoza*, *supra*, 91 Cal.App.5th at pp. 60-61; *People v. Lopez*, *supra*, 73 Cal.App.5th at p. 346;

28

*People v. Lopez*, supra, 57 Cal.App.5th at p. 416).  Also, allowing a limited reopening of the preliminary hearing is in furtherance of judicial economy because it avoids dismissal of the Gang charge and Gang enhancements, and avoids a completely new preliminary hearing on all of the charges and enhancements (*People v. Gaines*, *supra*, 46 Cal.4th at p. 180).  In addition, a limited reopening of the preliminary hearing, rather than dismissing the Gang charge and Gang enhancements, avoids defendant receiving the unfair windfall of dismissal because of legislative changes in the law after the original preliminary hearing (*People v. Figueroa*, *supra*, 20 Cal.App.4th at p. 71).  We therefore conclude the trial court had authority to allow reopening the preliminary hearing for the limited purpose of allowing the parties to present additional evidence on the new elements added by amended section 186.22.

Because the trial court had authority to reopen the preliminary hearing, we conclude the trial court did not err in denying defendant's motion to dismiss and ordering the reopening of the preliminary hearing for the limited purpose of proving up the Gang charge and Gang enhancements.  If the prosecution does not present additional evidence establishing probable cause for the Gang charge and Gang enhancements, in conformity with the amended version of section 186.22 during the supplemental preliminary hearing, the case shall proceed with an amended information without the Gang charge and Gang enhancements.  (*Mendoza*, *supra*, 91 Cal.App.5th at p. 62.)

## VII.

## DISPOSITION

Defendant's petition for writ of mandate is denied on the grounds the trial court did not err in (1) denying defendant's motion to dismiss the Gang charge and Gang enhancements and (2) allowing the reopening of the preliminary hearing for the purpose of allowing the prosecution to present additional evidence proving the new allegations required under amended section 186.22.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

We concur:

RAMIREZ _____

          P. J.

SLOUGH _____

          J.